1  Pierce Gore (SBN 128515)
2  1871 The Alameda, Suite 425
   San Jose, CA  95126
3  Telephone:  (408) 369-0800
   Fax:  (408) 369-0752
4  pgore@prattattorneys.com
5  *Attorneys for Plaintiffs*

ORIGINAL
FILED

APR 29 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

6

7

8

9                IN THE UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12                                                          LB

13  ALEX ANG and KEVIN AVOY,              Case No. CV 13  1953
    individually and on behalf of all others
14  similarly situated,
                                          **CLASS ACTION AND REPRESENTATIVE**
15               Plaintiffs,              **ACTION COMPLAINT FOR DAMAGES,**
                                          **EQUITABLE AND INJUNCTIVE RELIEF**
16  v.

17  WHITEWAVE FOODS COMPANY,              **JURY TRIAL DEMANDED**
    DEAN FOODS COMPANY, WWF
18  OPERATING COMPANY, and
    HORIZON ORGANIC DAIRY LLC,
19
                 Defendants.
20

21

22        Plaintiffs, Alex Ang and Kevin Avoy through the undersigned attorneys, bring this lawsuit

23  against Defendants, The WhiteWave Foods Company ("WhiteWave"), Dean Foods Company

24  ("Dean Foods"), WWF Operating Company ("WWF"), and Horizon Organic Dairy LLC

25  ("Horizon") (collectively "Defendants") as to Plaintiffs' own acts upon personal knowledge, and

26  as to all other matters upon information and belief.  In order to remedy the harm arising from

27  Defendants' unlawful conduct, which has resulted in unjust profits, Plaintiffs bring this action on

28  behalf of a national class of consumers, and alternatively, a California class of consumers who,

                                *Class Action Complaint*

1    within the last four years, purchased Defendants' products labeled with the ingredient

2    "evaporated cane juice." Defendants' Silk brand products which list evaporated cane juice as an

3    ingredient on their labels are listed below in paragraph 6 (where the list of unlawfully labeled Silk

4    products is defined as "Misbranded Silk Products"). Defendants' Horizon brand products which

5    list evaporated cane juice as an ingredient on their labels are listed below in paragraph 7 (where

6    the list of unlawfully labeled Horizon products is defined as "Misbranded Horizon Products").

7    Collectively the Misbranded Silk Products and the Misbranded Horizon Products are referred to

8    herein as "Misbranded Food Products."

9                                        **INTRODUCTION**

10            1.       Defendant WhiteWave is a leading consumer packaged food and beverage

11    company that manufactures, markets, distributes, and sells branded plant-based foods and

12    beverages, coffee creamers and beverages, and premium dairy products throughout North

13    America and Europe. WhiteWave focuses on the natural and organic segment of the food and

14    beverage industry. Among its product brands are Silk Soymilk, Silk Pure Almond, and Silk Pure

15    Coconut which are plant-based beverages and the Horizon Organic brand of dairy products.

16    WhiteWave is a pioneer in the plant-based and premium dairy product categories, and the Silk

17    and Horizon Organic brands are leaders in retail sales for these products in the United States.

18    WhiteWave became a publicly traded company in October 2012.

19            2.       Defendant Dean Foods is the parent company of WhiteWave. It is a leading food

20    and beverage company in the United States and a global leader in branded plant-based beverages.

21    Dean Foods built WhiteWave through a series of acquisitions which included Silk in 2002 and

22    Horizon Organic in 2004.

23            3.       Defendant WWF was a wholly owned subsidiary of Dean Foods through October

24    25, 2012 when Dean Foods contributed all of the capital stock of WWF to WhiteWave. Prior to

25    WhiteWave's initial public offering, WWF held substantially all of the historical assets and

26    liabilities related to the business that WhiteWave acquired through the contribution from Dean

27    Foods of the capital stock of WWF. WWF is now a wholly owned subsidiary of WhiteWave.

28

4.      Defendant Horizon Organic Dairy LLC distributes Horizon dairy products in California and throughout the United States.

5.      Defendants know that many of their consumers wish to maintain a diet comprised of healthy foods that do not contain added sugar.  Defendants recognize that consumers are willing to pay a premium for such healthy foods, and Defendants actively promote the health benefits of their products.

6.      WhiteWave, at times relevant to this civil action, has marketed many different flavors and varieties of its soymilk, almond milk and coconut milk products which list either "All Natural Evaporated Cane Juice" or "Organic Evaporated Cane Juice" as an ingredient. These products are: Silk Vanilla Soymilk, Silk Chocolate Soymilk, Silk Original Soymilk, Silk Very Vanilla Soymilk, Silk DHA Omega-3 Soymilk, Silk Light Vanilla Soymilk, Silk Light Chocolate Soymilk, Silk Light Original Soymilk, Silk Organic Vanilla Soymilk, Silk Organic Original Soymilk, Silk Pure Almond All Natural Original Almondmilk, Silk Pure Almond All Natural Vanilla Almondmilk, Silk Pure Almond All Natural Dark Chocolate Almondmilk, Silk Pure Coconut Original Coconut Milk, Silk Pure Coconut Vanilla Coconut Milk, Silk Original Creamer, Silk Hazelnut Creamer and Silk French Vanilla Creamer ("Misbranded Silk Products"). Most of these flavors and varieties of soymilk, almond milk and coconut milk are produced by WhiteWave in both refrigerated and shelf stable products and many of them are also produced in single serve size as well.  Regardless of which size or type of product is produced, at times relevant to this civil action, each has listed on its label and each has been listed on Defendants' websites as containing "All Natural Evaporated Cane Juice" or "Organic Evaporated Cane Juice." All of these products are misbranded for the reasons stated herein.

7.      Defendants, at times relevant to this civil action, have also listed "Organic Evaporated Cane Juice" as an ingredient on the labels of the following Horizon Organic products: Horizon Organic Chocolate Lowfat Milk, Horizon Organic Vanilla Lowfat Milk, Horizon Organic DHA Omega-3 Organic Lowfat Chocolate Milk, Horizon Organic Fat Free Vanilla Yogurt, Horizon Organic Whole Vanilla Yogurt and Tuberz yogurt tubes in Surfin' Strawberry,

Blueberry Wave, Strawberry Lemonade Squeeze and Sour Apple Spray flavors ("Misbranded Horizon Products"). Tuberz yogurt tubes are marketed primarily to children. These products are also misbranded.

8. During the Class Period, Plaintiffs purchased the following Defendants' Misbranded Food Products: Silk Pure Almond All Natural Almond Milk (Vanilla); Horizon Vanilla Organic Lowfat Milk; Horizon Chocolate Organic Lowfat Milk; and Silk Creamer (French Vanilla) ("Purchased Products").

9. Although Defendants have listed "Evaporated Cane Juice" (sometimes described as "Organic" or "Natural") as an ingredient on the extensive number of products indicated above, the Food and Drug Administration ("FDA") has specifically warned companies not to use this term because it is 1)"false and misleading;" 2) in violation of a number of labeling regulations designed to ensure that manufacturers label their products with the common and usual names of the ingredients they use and accurately describe the ingredients they utilize; and 3) the ingredient in question is not a juice.

10. Additionally, the FDA's Standard of Identity for yogurt (21 CFR § 131.200) prohibits the inclusion of any nutritive carbohydrate sweeteners not listed in the standard of identity:

> sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar; refiner's sirup; molasses (other than blackstrap); high fructose corn sirup; fructose; fructose sirup; maltose; maltose sirup; dried maltose sirup; malt extract; dried malt extract; malt sirup; dried malt sirup; honey; maple sugar, or any of the sweeteners listed in part 168 of this chapter [21], except table sirup.

11. In listing "Evaporated Cane Juice on the labels of their products, Defendants do not disclose the fact that "Evaporated Cane Juice" is, in its ordinary and commonly understood terms know as, "sugar," and/or "dried cane syrup."

12. For example, the list of ingredients for Silk Vanilla Coconut Milk, which is representative of the labels on the other Misbranded Food Products, is as follows:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



19     13.     If a manufacturer is going to make a claim on a food label, the label must meet

20  certain legal requirements that help consumers make informed choices and ensure that they are

21  not misled.  As described more fully below, Defendants have made, and continue to make, false

22  and deceptive claims in violation of federal and California laws that govern the types of

23  representations that can be made on food labels.

24     14.     Identical federal and California laws regulate the content of labels on packaged

25  food.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by

26  the California legislature in the Sherman Food Drug & Cosmetic Law, California Health & Safety

27  Code § 109875, *et seq.* (the "Sherman Law").  Under FDCA section 403(a), food is "misbranded"

28  if "its labeling is false or misleading in any particular," or if it does not contain certain

1  information on its label or its labeling.  21 U.S.C. § 343(a).

2      15.    Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

3  term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those

4  claims that might be technically true, but still misleading.  If any representation in the labeling is

5  misleading, the entire food is misbranded, and no other statement in the labeling can cure a

6  misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and

7  the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-*

8  *Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove

9  that anyone was actually misled.

10      16.    Defendants have made, and continue to make, false and deceptive claims on their

11  Misbranded Food Products in violation of federal and California laws that govern the types of

12  representations that can be made on food labels.  In particular, in making unlawful "Evaporated

13  Cane Juice" claims on their Misbranded Food Products, Defendants have violated labeling

14  regulations mandated by federal and California law by listing sugar and/or sugar cane syrups as

15  "Evaporated Cane Juice."

16      17.    According to the FDA, the term "Evaporated Cane Juice" is not the common or

17  usual name of any type of sweetener, including dried cane syrup. Sugar or sucrose is defined by

18  regulation in 21 C.F.R. §101.4(b)(20) and 21 C.F.R. §184.1854, as the common or usual name for

19  material obtained from the crystallization from sugar cane or sugar beet juice that has been

20  extracted by pressing or diffusion, then clarified and evaporated.  Cane syrup is defined by

21  regulation in 21 C.F.R. § 168.130. The common or usual name for the solid or dried form of cane

22  syrup is "dried cane syrup."   Sugar cane products exist in many different forms, ranging from

23  raw sugars and syrups to refined sugar and molasses.  These products are differentiated by their

24  moisture, molasses, and sucrose content as well as by crystal size and any special treatments.

25  Sugar cane products are required by regulation (21 C.F.R. §101.4) to be described by their

26  common or usual names, sugar (21 C.F.R. 101.4(b)(20) and 21 C.F.R. §184.1854 or cane syrup

27  (21 C.F.R. 168.1340).  Other sugar cane products have common or usual names established by

28

common usage such as molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar and demerara sugar. The FDA has instructed that sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "Evaporated Cane Juice." The FDA considers such representations to be "false and misleading" under section 403(a)(1) of the FDCA (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (*i.e.,* that the ingredients are sugars or syrups) as required by 21 C.F.R § 102.5. Nevertheless, Defendants have made, and continue to make, false and deceptive claims on their Misbranded Food Products in violation of federal and California laws that govern the types of representations that can be made on food labels.

18. Under federal and California law, Defendants' Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold. Defendants' false and misleading labeling practices stem from their global marketing strategy. Thus, the violations and misrepresentations are similar across product labels and product lines.

19. Defendants' violations of law include the illegal advertising, marketing, distribution, delivery and sale of Defendants' Misbranded Food Products to consumers in California and throughout the United States.

## PARTIES

20. Plaintiff Alex Ang is a resident of San Francisco, California who purchased Defendants' Misbranded Food Products as indicated in paragraph 8 above during the four (4) years prior to the filing of this Complaint (the "Class Period").

21. Plaintiff Kevin Avoy is a resident of Los Gatos, California who purchased Defendants' Misbranded Food Products as indicated in paragraph 8 above during the four (4) years prior to the filing of this Complaint (the "Class Period").

22. Defendant The WhiteWave Food Company is a Delaware corporation, and does business throughout California and the United States, with its principal place of business located at 12002 Airport Way, Broomfield, Colorado. WhiteWave may be served with process of this

Court by service on its California registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

23.     Defendant Dean Foods Company is a Delaware corporation, and does business throughout California and the United States, with its principal place of business located at 2711 North Haskell Avenue, Suite 3400, Dallas, Texas 75204.    Dean Foods may be served with process of this Court by service on its California registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

24.     Defendant WWF Operating Company is a Delaware corporation, and does business throughout California and the United States, with its principal place of business located at 12002 Airport Way, Broomfield, Colorado 80021-2546.   WWF may be served with process of this Court by service on its California registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

25.     Defendant Horizon Organic Dairy LLC is a Delaware Corporation and does business throughout California and the United States, with its principal place of business located at 12002 Airport Way, Broomfield, Colorado.    Horizon may be served with process of this Court by service on its California registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

26.     Defendants sell their Misbranded Food Products to consumers in grocery and other retail stores throughout California and the United States.   Defendants have pursued a common plan, design, and course of conduct, acted in concert with, aided and abetted, and otherwise conspired with one another, in furtherance of their common design and scheme to unlawfully advertise, market, distribute, deliver, and sell Defendants' Misbranded Food Products to consumers in California and throughout the United States.

27.     At all times relevant to this lawsuit, there has been such a unity of interest among Defendants that their separate identities exist to carry out the deceptive and unlawful scheme described herein.

28.     At all times relevant to this lawsuit, Defendants participated in the scheme

described herein in cooperation with and as agents and instrumentalities of each other for the purpose of deceiving and harming Plaintiffs and Class members.

29.     Defendants are juridically linked through contracts governing their management and control, through which the scheme described herein has been implemented.

30.     Defendants, acting as juridically linked entities pursuant to agreements among themselves, as each other's agents, as alter egos, and/or as co-conspirators, author the labels on, and determine the formulation of Defendants' Misbranded Food Products.

31.     Plaintiffs and Class members have been proximately harmed, and Defendants have been unjustly enriched, by Defendants' deceptive and unlawful scheme.

## JURISDICTION AND VENUE

32.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

33.     The Court has jurisdiction over the California claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

34.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

35.     The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendants are authorized to do business in California, have sufficient minimum contacts with California, and otherwise intentionally avail themselves of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

36.     Because a substantial part of the events or omissions giving rise to these claims

1  occurred in this District and because the Court has personal jurisdiction over Defendants, venue is

2  proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

3  <center>**FACTUAL ALLEGATIONS**</center>

4      A.    <u>**Identical California And Federal Laws Regulate Food Labeling**</u>

5      37.    Food manufacturers are required to comply with identical federal and state laws

6  and regulations that govern the labeling of food products. First and foremost among these is the

7  FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

8      38.    Pursuant to the Sherman Law, California has expressly adopted the federal

9  labeling requirements as its own and indicated that "[a]ll food labeling regulations and any

10  amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993,

11  or adopted on or after that date shall be the food regulations of this state." California Health &

12  Safety Code §110100.

13      39.    In addition to its blanket adoption of federal labeling requirements, California has

14  also enacted a number of laws and regulations that adopt and incorporate specific enumerated

15  federal food laws and regulations. For example, food products are misbranded under California

16  Health & Safety Code § 110660 if their labeling is false and misleading in one or more

17  particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails

18  to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and

19  regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if

20  their labeling fails to conform with the requirements for nutrient content and health claims set

21  forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California

22  Health & Safety Code § 110705 if words, statements and other information required by the

23  Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are

24  misbranded under California Health & Safety Code § 110735 if they are represented as having

25  special dietary uses but fail to bear labeling that adequately informs consumers of their value for

26  that use; and are misbranded under California Health & Safety Code § 110740 if they contain

27  artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose

28

<center>10
*Class Action Complaint*</center>

1   that fact on their labeling.

2       **B.**    **FDA Enforcement History**

3       40.    In recent years the FDA has become increasingly concerned that food

4   manufacturers were disregarding food labeling regulations. To address this concern, the FDA

5   elected to take steps to inform the food industry of its concerns and to place the industry on notice

6   that food labeling compliance was an area of enforcement priority.

7       41.    In October 2009, the FDA issued a *Guidance For Industry: Letter regarding Point*

8   *Of Purchase Food Labeling* to address its concerns about front of package labels ("2009 FOP

9   Guidance"). The 2009 FOP Guidance advised the food industry:

> FDA's research has found that with FOP labeling, people are less likely to check
> the Nutrition Facts label on the information panel of foods (usually, the back or
> side of the package). It is thus essential that both the criteria and symbols used in
> front-of-package and shelf-labeling systems be nutritionally sound, well-designed
> to help consumers make informed and healthy food choices, and not be false or
> misleading. The agency is currently analyzing FOP labels that appear to be
> misleading. The agency is also looking for symbols that either expressly or by
> implication are nutrient content claims. We are assessing the criteria established by
> food manufacturers for such symbols and comparing them to our regulatory
> criteria.

> It is important to note that nutrition-related FOP and shelf labeling, while currently
> voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic
> Act that prohibit false or misleading claims and restrict nutrient content claims to
> those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in
> a manner that is false or misleading misbrands the products it accompanies.
> Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that
> does not comply with the regulatory criteria for the claim as defined in Title 21
> Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is
> misbranded. We will consider enforcement actions against clear violations of these
> established labeling requirements. . .

> … Accurate food labeling information can assist consumers in making healthy
> nutritional choices. FDA intends to monitor and evaluate the various FOP labeling
> systems and their effect on consumers' food choices and perceptions. FDA
> recommends that manufacturers and distributors of food products that include FOP
> labeling ensure that the label statements are consistent with FDA laws and
> regulations. FDA will proceed with enforcement action against products that bear
> FOP labeling that are explicit or implied nutrient content claims and that are not
> consistent with current nutrient content claim requirements. FDA will also proceed
> with enforcement action where such FOP labeling or labeling systems are used in a

manner that is false or misleading.

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm187208.htm

42.    The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

43.    Defendants knew or should have known of the 2009 FOP guidance. Despite the issuance of the 2009 FOP Guidance, Defendants did not remove the unlawful and misleading food labeling claims from their Misbranded Food Products.

44.    On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (hereinafter, "Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages.  Our citizens appreciate that effort, and many use this nutrition information to make food choices.  Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States.  This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

> With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs.  The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections....

> As we move forward in those areas, I must note, however, that there is one area in which more progress is needed.  As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and,

indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations.  As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990.  Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace.  While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices.

. . . .

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole.  In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products.  That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling.  I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

http://www.fda.gov/Food/LabelingNutrition/ucm202733.htm?utm_campaign=Google2&utm_source=fdaSearch&utm_medium=website&utm_term=Open   Letter   to   Industry   from   Dr.   Hamburg&utm_content=1

45.     Defendants continue to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter.

46.     At the same time that it issued its Open Letter, the FDA issued a number of warning letters to companies whose products were misbranded as a result of their unlawful labels.

47.     In its 2010 Open Letter to industry the FDA stated that the agency not only

Case3:13-cv-01953-SC   Document1   Filed04/29/13   Page14 of 36

1   expected companies that received warning letters to correct their labeling practices but also

2   anticipated that other companies would examine their food labels to ensure that they are in full

3   compliance with food labeling requirements and make changes where necessary. Defendants did

4   not change the labels on their Misbranded Food Products in response to these warning letters.

5       48.    In addition to its general guidance about unlawful labeling practices the FDA has

6   issued specific guidance about the unlawful practices at issue here. In October of 2009, the FDA

7   issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice,* which advised

8   the industry that the term "Evaporated Cane Juice" was unlawful.

9   http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/Label

10  ingNutrition/ucm181491.htm

11      49.    In addition to its guidance to industry in general, the FDA has repeatedly sent

12  warning letters to specific companies regarding specific violations such as the ones at issue in this

13  case.

14      50.    In particular, the FDA has issued warning letters to at least five companies for

15  utilizing the unlawful term "Evaporated Cane Juice."

16      51.    Defendants have continued to ignore the 2009 FOP Guidance which detailed the

17  FDA's guidance on how to make food labeling claims as well as the 2009 Guidance on

18  Evaporated Cane Juice and the FDA Warning letters on evaporated cane juice. As such,

19  Defendants' Misbranded Food Products continue to run afoul of the 2009 FOP Guidance and the

20  2009 Guidance on Evaporated Cane Juice and the FDA Warning letters on evaporated cane juice

21  as well as federal and California law.

22      52.    Despite the numerous FDA warning letters and the 2009 Guidance on Evaporated

23  Cane Juice and the FDA evaporated cane juice warning letters and the 2010 Open Letter, at times

24  relevant to this civil action, Defendants have failed to remove the unlawful and misleading food

25  labeling ingredients from Defendants' Misbranded Food Products.

26      53.    Despite the FDA's numerous warnings to industry, Defendants have continued to

27  sell products bearing unlawful food labeling claims without meeting the requirements to make

28

*Class Action Complaint*

1    such claims.

2          54.    In fact, the International Dairy Foods Association (IDFA), of which Defendants

3    Dean Foods and WhiteWave are members, sent a comment to the FDA on December 7, 2009,

4    seeking to have the FDA's guidance for industry on evaporated cane juice withdrawn.   The

5    comment represents an extensive apologia for use of the terms "evaporated cane juice," as

6    follows:

7               Evaporated Cane Juice has been an ingredient utilized as a sweetener in
8               specialized milk products for over a decade, with no known instances
                of consumer confusion that this ingredient is a fruit or vegetable juice.
9               It is possible that requiring the Evaporated Cane Juice to be declared
                on food labels as "dried cane syrup" could actually lead to consumer
10              misunderstanding and confusion that the sweeteners component of the
                food has been changed or replace[d] with a different ingredient
11              which in [sic] no longer minimally processed or natural.

12              We agree with FDA's assessment that Evaporated Cane Juice is not a
13              juice as defined in 21 CFR 120.1 and should not be included in the
                percentage juice declaration.  However, we do not believe that the
14              word "juice" must exclusively be used to define a fruit or vegetable
                juice that consumers are accustomed to consuming as such in their
15              diet.  Taken in context of the complete ingredient name, "evaporated
16              cane juice" is accurate and conveys the true form of the ingredient, in
                which the juice from the sugar cane has been evaporated into a
17              crystalline form.

18          See Comment of International Dairy Foods Association, December 7, 2009, Docket
19    Number FDA-2009-D-0430 (attached as Exhibit 3).

20    This request to withdraw the guidance was not acted upon and in fact the FDA has repeatedly
      issued warning letters since the request indicating the proper way to declare such an ingredient is
21    contained in the guidance. Nevertheless the Defendants persist in labeling their products in way
      the FDA considers to be false and misleading.
22
            55.    Even in the face of direct FDA regulation of which they are aware indicating that
23
      "Evaporated Cane Juice" is a false and misleading term, Defendants have utilized and continue to
24
      utilize the term "Evaporated Cane Juice" in many products at the present time.
25

26

27

28

C.     <u>Defendants' Unlawful and Misleading Evaporated Cane Juice Labeling</u>

56.     "Evaporated Cane Juice" is an unlawful term, prohibited from use on a product label or in its ingredient list. 21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California, prohibit manufacturers from referring to foods by anything other than their common and usual names. 21 C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers from referring to ingredients by anything other than their common and usual names. Defendants have violated these provisions by failing to use the common or usual name for ingredients mandated by law. In particular, Defendants have used and continue to use the term "Evaporated Cane Juice" on products listed in paragraphs 6-8 above in violation of numerous labeling regulations designed to protect consumers from misleading labeling practices. Defendants' practices also violate express FDA policies.

57.     For example, Defendants violated the FDA's express policy with respect to the listing of certain ingredients such as sugar or dried cane syrup. As stated by the FDA, "FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as 'evaporated cane juice' because that term falsely suggests that the sweeteners are juice."

58.     The FDA "considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1) because they fail to reveal the basic nature of the food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21 U.S.C. 102.5."

59.     In October of 2009, the FDA issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice*, which advised industry and that:

> "…the term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…

> "Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." …

"As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . . ." The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))...

"Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)...

"The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."...

"Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

60.     Despite the issuance of the 2009 FDA Guidance, Defendants, at times relevant to this civil action, failed to remove the unlawful and misleading food labeling ingredients from their Misbranded Food Products or correctly label them as required by law.

61.     Defendants often list ingredients with unlawful and misleading names. At times relevant to this civil action, the Nutrition Facts label of the Misbranded Food Products has listed "Evaporated Cane Juice" as an ingredient. According to the FDA, ""evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup." The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'" Similarly, sugar or sucrose is defined by regulation in 21 C.F.R. §101.4(b)(20) and §184.1854, as the

17
*Class Action Complaint*

common or usual name for material obtained from the crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated.

62.     Various FDA warning letters have made it clear that the use of the term "Evaporated Cane Juice" is unlawful because the term does not represent the common or usual name of a food or ingredient. These warning letters indicate that foods bearing labels which contain the term "Evaporated Cane Juice" are misbranded.

63.     Such products mislead consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

64.     Defendants' false, unlawful and misleading ingredient listings render products misbranded under federal and California law.  Misbranded products cannot be legally sold and have no economic value and are legally worthless.  Plaintiffs and the class have paid a premium price for the Misbranded Food Products.

65.     Defendants have also made these illegal claims on their websites and in advertising in violation of federal and California law.

**D.      Defendants Have Violated The Standard Of Identity For Milk**

66.     FDA regulations require specific information (e.g. the name of the food) to appear on the Principal Display Panel of all packaged foods. The name of the food will either be determined by the product's standard of identity or its common or usual name. Many food products have established standards of identity, which may specify compositional characteristics and/or manufacturing parameters for the product, for example those for milk, yogurt, cheeses, and ice cream (21 CFR 131.110, 131.200, 133, and 135.110, respectively).

67.     A product is misbranded if the product name includes a standardized food name, e.g., "milk," as part of a name for that product, e.g., "soy milk" or "almond milk." The FDA has so ruled on a number of occasions, issuing warning letters to several manufacturers who have misbranded foods by misusing names of standardized dairy products.

68.     For example, in 2008 the FDA sent a warning letter to Lifesoy, Inc. in which it stated:

Your LIFESOY® Natural Soymilk Unsweetened (1/2 gallon) and LIFESOY® Natural Soymilk Sweetened (1/2 gallon) products use the term "milk" as part of their common or usual name. Milk is a standardized food defined as the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows [21 CFR 131.110]. Therefore, we do not consider "soy milk" to be an appropriate common or usual name because it does not contain "milk." We do consider "soy drink" or "soy beverage," however, as acceptable common or usual names for such products.

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2008/ucm1048184.htm

69.    Similarly, in 2012 the FDA sent a warning letter to Fong Kee Tofu Company, Inc. in which it stated:

Your Fresh Soy Milk Sweet product uses the term "milk" as a part of the common or usual name. Milk is a standardized food defined in 21 CFR 131.110 as the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows. Therefore, we do not consider "soy milk" to be an appropriate common or usual name because your product does not contain "milk." We consider "soy drink" or "soy beverage," however as acceptable common or usual names for such products.

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm295239.htm

70.    Adding the name of a plant material in front of the word "milk" does not result in an appropriate name for non-dairy products, as these products do not contain milk or milk ingredients, the plant-based liquids are not permitted ingredients in milk, nor do they represent the common or usual names of these beverages. In reality, many of these non-dairy plant-based beverages are little more than water and soluble carbohydrates, with little to no nutrient value. There can be no doubt that these products have been formulated and positioned to mimic the positive quality attributes of milk from lactating cows and, because of this, are nothing more than imitation milks that should be labeled as such.

71.    Plant-based beverages naturally contain only one-fifth the amount of calcium as cow's milk. To serve as a more significant non-dairy calcium source, some of these beverages are fortified with calcium to a level comparable to that of cow's milk. However, the amount of nutrient present in a food and the amount absorbed by the body are not equal. In fortified foods, the ultimate bioavailability of the nutrients depends on the interactions among a variety of formulation parameters, including the composition of the food matrix, the form of the fortificant,

and the level of fortification. While the nutrition facts panel may indicate an equal level of calcium present, depending on the specific conditions and the delivery mechanism, calcium from a soy beverage may be up to 25% less absorbed than calcium from cow's milk.

72.     Regardless of whether or not a particular food system is optimized for bioavailability of a nutrient, calcium-fortified beverages suffer from the additional technological challenge of keeping the calcium in suspension. As a result, the fortificant has a tendency to settle out to the bottom of the container. Therefore, it is irrelevant if calcium bioavailability for two products is equivalent, if the fortificant is not actually being consumed. Even with vigorous shaking, significant amounts (as much as 80%) of the calcium in a fortified plant-based beverage may remain as sediment in the container

73.     FDA's own regulations state that addition of a nutrient to a food is appropriate only when the nutrient "is stable in the food under customary conditions of storage, distribution, and use" and it "is physiologically available from the food" [21 CFR 104.20 (g)(1) and (2)]. Plant-based beverages vary in terms of their level of calcium fortification and the type of fortificant employed (see Table 3), which affects the bioavailability of calcium from these products, and, as mentioned above, the degree of sedimentation will affect the amount of calcium actually ingested. Therefore, because of the issues with stability and bioavailability, the practice of adding calcium to plant-based beverages is not in compliance with FDA's fortification policy. Further, it is misleading and deceptive to consumers like the Plaintiffs, especially when the level of fortification and marketing of the product suggest it serves as a substitute for dairy milk. A consumer may think he or she is both ingesting and absorbing an amount of calcium declared on the nutrition label that is comparable to dairy milk, but the actual amount would be measurably less.

74.     The Plaintiffs were misled by the Defendants' use of the term milk in connection with their plant-based beverages.   Defendants' actions illegally mislead the public by inappropriately employing names and terms reserved by law for standardized dairy products, thereby creating false impressions that these products provide comparable quality, taste, or

nutritional benefits when they do not. The Plaintiffs would not have bought the Defendants' soy and almond beverage products had Plaintiffs known they were misbranded and not capable of complying with the standard of identity for milk and that in comparison with milk meeting the standard for milk they were an inferior product and were nutritionally inferior and that most aspects of their nutritional profile were not due to their unnatural characteristics but rather due to improper fortification in violation of the FDA fortification policy.

      **E.**   **Defendants Have Violated California Law**

75.    Defendants have violated California Health & Safety Code § 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

76.    Defendants have violated California Health & Safety Code § 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

77.    Defendants have violated California Health & Safety Code §§ 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

78.    Defendants have violated California Health & Safety Code § 110660 because Defendants' product labeling is false and misleading in one or more ways. Defendants' have violated California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous. Defendants' have violated California Health & Safety Code § 110710 because their Misbranded Food Products do not conform to the stand of identity for milk and yogurt. Defendants' have violated California Health & Safety Code § 110725 as they fail to state the common or usual name of each ingredient on their product labels.

79.    Defendants have violated California Health & Safety Code § 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

80.     Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because the products are purported to be or are represented for special dietary uses, and their labels fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

81.     Defendants have violated California Health & Safety Code § 110765, which makes it unlawful for any person to misbrand any food.

82.     Defendants have violated California Health & Safety Code § 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

83.     Defendants have violated the standards set by 21 C.F.R. §§ 101.4 and 102.5 which has been incorporated by reference in the Sherman Law, by failing to include on its product labels the common and usual names of its food products. Defendants have also violated the standards set by 21 C.F.R. §§ 101.3 and 131.110 and 131.200 by violating the Standard of Identity for milk and yogurt.

F.     **Plaintiffs Purchased Defendants' Misbranded Food Products**

84.     Plaintiffs care about the nutritional content of food and seek to maintain a healthy diet.

85.     Plaintiff Alex Ang purchased Horizon Organic Vanilla Lowfat Milk, Horizon Organic Chocolate Lowfat Milk and Silk Pure Almond All Natural Almond Milk (Vanilla).

86.     Plaintiff Kevin Avoy purchased Horizon Organic Vanilla Lowfat Milk, Silk Pure Almond All Natural Almond Milk (Vanilla) and Silk Creamer (French Vanilla).

87.     Plaintiffs purchased the Purchased Products as indicated in paragraph 8 above which listed the ingredient "evaporated cane juice" or "organic evaporated cane juice" during the Class Period. The plant-based beverages purchased by Plaintiffs also used the incorporated the term "milk" into their statement of identity despite not being milk products as defined by the FDA. Plaintiffs also purchased Defendants' "yogurt" which did not met the standards required

for being identified as "yogurt."

88.     Plaintiffs would not have purchased the Purchased Products had Plaintiffs known that the Purchased Products contained sugar or dried cane syrup. Plaintiffs read and reasonably relied on the labels on the Purchased Products, including the ingredient, "evaporated cane juice" on the labels, before purchasing them.

89.     Plaintiffs relied on Defendants' package labeling including the back panel ingredients list referencing "evaporated cane juice" and its use of the term milk on its soy and almond beverages and based and justified the decision to purchase Defendants' products in substantial part on Defendants' package labeling, including the labeling claiming that Defendants' product contained as an ingredient "evaporated cane juice" as well of its misuse of the standardized terms "milk" and "yogurt."

90.     At point of sale, Plaintiffs did not know, and had no reason to know, that Defendants' products were misbranded as set forth herein, and would not have bought the products had Plaintiffs known the truth about them.

91.     At point of sale, Plaintiffs did not know, and had no reason to know, that Defendants' "evaporated cane juice" ingredient name as well as its misuse of the standardized terms "milk" and "yogurt" were unlawful and unauthorized as set forth herein. Had Plaintiffs known this information, Plaintiffs would not have bought the products.

92.     In reliance on Defendants' "evaporated cane juice" ingredient name as well as its misuse of the standardized terms "milk" and "yogurt," Plaintiffs and thousands of others in California and throughout the United States purchased the Misbranded Food Products at issue.

93.     Defendants' labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue. Defendants' misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase the products at issue.

94.     A reasonable person would also attach importance to whether Defendants'

1   products were legally salable, and capable of legal possession, and to Defendants' representations

2   about these issues in determining whether to purchase the products at issue. Plaintiffs would not

3   have purchased the Purchased Products had Plaintiffs known they were not capable of being

4   legally sold or held. As a result of Defendants' unlawful use of the terms "evaporated cane juice,"

5   "milk" or "yogurt, Plaintiffs and the Class members purchased the Misbranded Food Products at

6   issue. Plaintiffs and the Class members have been proximately harmed, and Defendants have been

7   unjustly enriched, by Defendants' deceptive and unlawful scheme.

8   ## CLASS ACTION ALLEGATIONS

9          95.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure

10   23(b)(2) and 23(b)(3) on behalf of the following Class:

11   All persons in the United States, and alternatively, in the State of California who, within the Class
     Period, purchased one or more of the following products:
12

13          Silk Vanilla Soymilk,
            Silk Chocolate Soymilk,
14          Silk Original Soymilk,
            Silk Very Vanilla Soymilk,
15          Silk DHA Omega-3 Soymilk,
            Silk Light Vanilla Soymilk,
16          Silk Light Chocolate Soymilk,
            Silk Light Original Soymilk,
17          Silk Organic Vanilla Soymilk,
            Silk Organic Original Soymilk,
18          Silk Pure Almond All Natural Original Almond Milk,
            Silk Pure Almond All Natural Vanilla Almond Milk,
19          Silk Pure Almond All Natural Dark Chocolate Almond Milk,
            Silk Pure Coconut Original Coconut Milk,
20          Silk Pure Coconut Vanilla Coconut Milk,
            Horizon Organic Chocolate Lowfat Milk,
21          Horizon Organic Vanilla Lowfat Milk,
            Horizon Organic DHA Omega-3 Organic Lowfat Chocolate Milk,
22          Silk Original Creamer,
            Silk Hazelnut Creamer,
23          and Silk French Vanilla Creamer.

24

25

26          96.    The following persons are expressly excluded from the Class:  (1) Defendants and

27   their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from

28   the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and

1    its staff.

2        97.    This action can be maintained as a class action because there is a well-defined

3    community of interest in the litigation and the proposed Class is easily ascertainable.

4        98.    Numerosity:  Based upon Defendants' publicly available sales data with respect to

5    the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that

6    joinder of all Class members is impracticable.

7        99.    Common Questions Predominate:  This action involves common questions of law

8    and fact applicable to each Class member that predominate over questions that affect only

9    individual Class members.  Thus, proof of a common set of facts will establish the right of each

10   Class member to recover.  Questions of law and fact common to each Class member include, just

11   for example:

12              a.    Whether Defendants engaged in unlawful, unfair or deceptive
                      business practices by failing to properly package and label its
13                    Misbranded Food Products sold to consumers;

14              b.    Whether the food products at issue were misbranded as a matter of
                      law;
15

16              c.    Whether Defendants made unlawful and misleading "evaporated
                      cane juice" claims with respect to food products sold to consumers
17                    or misused the terms milk or yogurt on the products they sold to
                      consumers;   .

18              d.    Whether Defendants violated California Bus. & Prof. Code §
                      17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the
19                    Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*,
                      California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and
20                    the Sherman Law;

21              e.    Whether Plaintiffs and the Class are entitled to equitable and/or
                      injunctive relief;
22

23              f.    Whether Defendants' unlawful, unfair and/or deceptive practices
                      harmed Plaintiffs and the Class; and
24

25              g.    Whether Defendants were unjustly enriched by their deceptive
                      practices.
26

27       100.   Typicality:  Plaintiffs' claims are typical of the claims of the Class because

28   Plaintiffs bought the Purchased Products during the Class Period.  Defendants' unlawful, unfair

and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiffs and the Class sustained similar injuries arising out of Defendants' conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendants' wrongful conduct.  In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

101.   Adequacy:  Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

102.   Superiority:   There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.   Class

treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

103.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

104.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

105.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Unlawful Business Acts and Practices

106.    Plaintiffs incorporate by reference each allegation set forth above.

107.    Defendants' conduct constitutes unlawful business acts and practices.

108.    Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

109.    Defendants are corporations and, therefore, "persons" within the meaning of the Sherman Law.

110.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

111.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of

1    Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

2         112.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of

3    Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

4         113.    Defendants sold Plaintiffs and the Class Misbranded Food Products that were not

5    capable of being sold or held legally and which had no economic value and were legally

6    worthless.

7         114.    As a result of Defendants' illegal business practices, Plaintiffs and the Class,

8    pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

9    conduct and such other orders and judgments which may be necessary to disgorge Defendants'

10   ill-gotten gains and to restore to any class member any money paid for the Misbranded Food

11   Products.

12        115.    Defendants' unlawful business acts present a threat and reasonable continued

13   likelihood of injury to Plaintiffs and the Class.

14        116.    As a result of Defendants' conduct, Plaintiffs and the Class, pursuant to Business

15   and Professions Code § 17203, are entitled to an order enjoining such future conduct by

16   Defendants, and such other orders and judgments which may be necessary to disgorge

17   Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food

18   Products by Plaintiffs and the Class.

19                             **SECOND CAUSE OF ACTION**
20                    **Business and Professions Code § 17200, *et seq.***
                              <u>**Unfair Business Acts and Practices**</u>
21

22        117.    Plaintiffs incorporate by reference each allegation set forth above.

23        118.    Defendants' conduct as set forth herein constitutes unfair business acts and

24   practices.

25        119.    Defendants sold Misbranded Food Products in California and throughout the

26   United States during the Class Period.

27        120.    Plaintiffs and members of the Class suffered a substantial injury by virtue of

28   buying Defendants' Misbranded Food Products that they would not have purchased absent

Defendants' illegal conduct.

121.   Defendants' deceptive marketing, advertising, packaging and labeling of Misbranded Food Products and sale of unsalable misbranded products that were illegal to possess was of no benefit to Plaintiffs and members of the Class, and the harm to consumers is substantial.

122.   Defendants sold Plaintiffs and the Class Misbranded Food Products that were not capable of being legally sold or held and that which had no economic value and were legally worthless.

123.   Plaintiffs and the Class who purchased Defendants' Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

124.   The consequences of Defendants' conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendants' conduct is and continues to be illegal, immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the Class.

125.   Pursuant to Business and Professions Code § 17203, as a result of Defendants' conduct, Plaintiffs and the Class, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiffs and the Class.

### THIRD CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
<u>**Fraudulent Business Acts and Practices**</u>

126.   Plaintiffs incorporate by reference each allegation set forth above.

127.   Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

128.   Defendants sold Misbranded Food Products in California and throughout the

United States during the Class Period.

129.    Defendants' misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentations that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiffs and members of the Class were deceived.  Defendants have engaged in fraudulent business acts and practices.

130.    Defendants' fraud and deception caused Plaintiffs and the Class to purchase Defendants' Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

131.    Defendants sold Plaintiffs and the Class Misbranded Food Products that were not capable of being sold or held legally and that which had no economic value and were legally worthless.

132.    As a result of Defendants' conduct as set forth herein, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiffs and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500,** *et seq.*
**Misleading and Deceptive Advertising**

133.    Plaintiffs incorporate by reference each allegation set forth above.

134.    Plaintiffs assert this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendants.

135.    Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

136.    Defendants engaged in a scheme of offering Misbranded Food Products for sale to Plaintiffs and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and

nature of Defendants' Misbranded Food Products. Defendants' advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products and are statements disseminated by Defendants to Plaintiffs and the Class that were intended to reach members of the Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

137. In furtherance of their plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendants' Misbranded Food Products. Plaintiffs and the Class necessarily and reasonably relied on Defendants' materials, and were the intended targets of such representations.

138. Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiffs and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendants' Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

139. As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class. Misbranded products cannot be legally sold or held and which have no economic value and are legally worthless.

140. Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiffs and the Class.

### FIFTH CAUSE OF ACTION
**Business and Professions Code § 17500, *et seq.***
**Untrue Advertising**

141. Plaintiffs incorporate by reference each allegation set forth above.

142. Plaintiffs assert this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

143. Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

144. Defendants engaged in a scheme of offering Defendants' Misbranded Food Products for sale to Plaintiffs and the Class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Food Products. Defendants' advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products, and are statements disseminated by Defendants to Plaintiffs and the Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

145. In furtherance of their plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendants' Misbranded Food Products, and falsely misrepresented the nature of those products. Plaintiffs and the Class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

146. Defendants' conduct in disseminating untrue advertising throughout California deceived Plaintiffs and members of the Class by obfuscating the contents, nature and quality of Defendants' Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

147. As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of

Plaintiffs and the Class. Misbranded products cannot be legally sold or held and which have no economic value and are legally worthless.

148. Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiffs and the Class.

## SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

149. Plaintiffs incorporate by reference each allegation set forth above.

150. This cause of action is brought pursuant to the CLRA. Plaintiffs do not currently seek monetary damages for this cause of action and this cause of action is limited solely to injunctive relief. Plaintiffs intend to amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice pursuant to Cal. Civ. Code § 1782.

151. At the time of any amendment seeking damages under the CLRA, Plaintiffs will demonstrate that the violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

152. Consequently, Plaintiffs and the Class will be entitled to actual and punitive damages against Defendants for violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

153. Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

154. Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

155. Plaintiffs and members of the Class are "consumers" as that term is defined by the

CLRA in Cal. Civ. Code §1761(d).

156.    Defendants' Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

157.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Sections 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

158.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

159.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

160.    By engaging in the conduct set forth herein, Defendants have violated and continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

161.    Plaintiffs request that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If Defendants are not restrained from engaging in these practices in the future, Plaintiffs and the Class will continue to suffer harm.

///

///

///

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

162.    Plaintiffs incorporate by reference each allegation set forth above.

163.    As a result of Defendants' fraudulent and misleading labeling, advertising, marketing and sales of Defendants' Misbranded Food Products, Defendants were enriched at the expense of Plaintiffs and the Class.

164.    Defendants sold Misbranded Food Products to Plaintiffs and the Class that were not capable of being sold or held legally and which had no economic value and were legally worthless.  It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits it received from Plaintiffs and the Class, in light of the fact that the products were not what Defendants purported them to be.    Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiffs and the Class of all monies paid to Defendants for the products at issue.

165.    As a direct and proximate result of Defendants' actions, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury of all claims.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendants as follows:

A.    For an order certifying this case as a class action and appointing Plaintiffs and Plaintiffs' counsel to represent the Class;

B.    For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiffs and the Class for all causes of action other than the CLRA, as Plaintiffs do not seek monetary relief under the CLRA, but intend to amend this Complaint to seek such relief;

C.    For an order requiring Defendants to immediately cease and desist from selling Misbranded Food Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and

ordering Defendants to engage in corrective action;

      D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

      E.    For an order awarding attorneys' fees and costs;

      F.    For an order awarding punitive damages;

      G.    For an order awarding pre-and post-judgment interest; and

      H.    For an order providing such further relief as this Court deems proper.

Dated: April 29, 2013          Respectfully submitted,

*Pierce Gore*

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

*Attorneys for Plaintiffs*