IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ANG and KEVIN AVOY, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>WHITEWAVE FOODS COMPANY, DEAN FOODS COMPANY, WWF OPERATING COMPANY, and HORIZON ORGANIC DAIRY LLC,<br><br>Defendants. | Case No. 13-cv-1953<br><br>ORDER GRANTING MOTION TO <u>DISMISS</u> |

## I. INTRODUCTION

Plaintiffs bring this putative class action in connection with Defendants' alleged misbranding of various products containing evaporated cane juice, including soymilk, almond milk, lowfat milk, and yogurt products. ECF No. 1 ("Compl."). Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 17 ("MTD"). The motion is fully briefed, ECF Nos. 31 ("Opp'n"), 28 ("Reply"),[1] and appropriate for determination without

---

[1] Plaintiffs filed a "corrected" opposition brief after Defendants filed their reply.

oral argument per Civil Local Rule 7-1(b).  For the reasons set forth below, Defendants' motion is GRANTED and this action is DISMISSED WITH PREJUDICE.

**II.   BACKGROUND**

Plaintiffs target two types of products sold by Defendants: the "Silk Products" and the "Horizon Products" (collectively, the "Products").  The Silk Products are a variety of plant-based beverages, including "Silk Vanilla Soymilk," "Silk Pure Almond All Natural Original Almond Milk," and "Silk Pure Coconut Original Coconut Milk" (hereinafter, the "Silk Products").  See Compl. ¶¶ 6, 95.  The Horizon Products are a variety of yogurt and milk products, including Organic Whole Vanilla Yogurt, Tuberz yogurt tubes (collectively, the "Horizon Yogurt Products"), and Horizon Organic Vanilla Lowfat Milk.  The labels of all of the Products list "All Natural Evaporated Cane Juice" or "Organic Evaporated Cane Juice" (hereinafter, "evaporated cane juice" or "EJC") as an ingredient.  Id.

Plaintiffs allege that the Products were misbranded in three ways.  First, Plaintiffs claim that, pursuant to US Food and Drug Administration ("FDA") guidelines, Defendants should have used the terms "sugar" or "dried cane syrup" instead of EJC on the Products' labels (the "ECJ Claims").  Second, Plaintiffs claim that Defendants misbranded the Silk Products by using names like "soymilk," "almond milk," and "coconut milk," since the Silk Products are plant-based, and the FDA defines "milk" as a substance coming from lactating cows (the "Milk Claims").  Third, Plaintiffs allege that, pursuant to FDA guidelines, the Horizon Yogurt

2

Products are mislabeled as yogurt because they contain evaporated cane juice, which is allegedly nothing more than sugar.

Plaintiffs filed this suit on April 29, 2013, and assert claims for (1)-(3) unfair, unlawful, and fraudulent practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (4) & (5) misleading and deceptive advertising and untrue advertising in violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code 17500, et seq.; (6) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; and (7) restitution based on unjust enrichment/quasi-contract. Plaintiffs bring this action on behalf of themselves and, pursuant to Rules 23(b)(2) and 23(b)(3), all persons in the United States who purchased the Products.

On April 8, 2013, before Plaintiffs filed the instant action, another food-labeling class action was filed against Defendants in U.S. District Court for the Southern District of Florida.[2] ECF No. 18 ("Defs.' RJN") Ex. 14 ("Singer Compl."). The plaintiff in the Florida action, Barbara Singer ("Singer"), targeted many of the same products as Plaintiffs. Compare Compl. ¶ 95 with Singer Compl. ¶ 13. Like Plaintiffs, Singer alleged that these products were misbranded because EJC "is nothing more than sugar, cleverly disguised." Singer Compl. ¶ 2. Singer also relied on many of the same FDA guidelines as Plaintiffs. Compare Compl. 48, 57-61 with Singer Compl. ¶¶ 16-19.

The parties to the Florida action subsequently reached a class

---

[2] That action is captioned Singer v. WW Operating Company, Case No. 13-cv-2132 (S.D. Fla.) (hereinafter, the "Florida action").

3

settlement. On April 19, 2013, the Florida court preliminarily approved a settlement, defining the settlement class as all persons who, from January 1, 2005 to the present, purchased Defendants' ECJ-labeled products throughout the United States. RJN Ex. 16. The Court required class notice to be published in USA Today and on a website established for the purpose of providing notice, finding this notice to be the best practicable under the circumstances and to be fully compliant with the requirements of Federal Rule of Civil Procedure 23 and of due process. Id. Plaintiffs, absent class members in the Florida action, did not object to the settlement within the timeline set forth by the Florida court. On June 28, 2013, the Florida court granted final approval of the settlement (hereinafter, the "Singer Settlement").

Plaintiffs subsequently filed a motion to intervene in the Florida action and a motion to set aside the Singer Settlement. Those motions were denied on October 8, 2013. ECF No. 35-1 ("Oct. 8 Order"). Among other things, the Florida court found that Plaintiffs were provided with adequate notice of the Florida action and that Plaintiffs' interests were adequately represented in that action.

**III. LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

4

1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

**IV.  DISCUSSION**

Defendants now move to dismiss the instant action on the grounds that it is barred by res judicata.  Alternatively, Defendants argue that Plaintiffs' claims are preempted or are implausible.  As set forth below, the Court finds that the final judgment in the Florida action precludes Plaintiffs from bringing their EJC and Yogurt Claims.  Further, the Court finds that Plaintiffs' Milk Claims are either preempted or implausible.

**A.   Res Judicata**

Defendants argue that the Singer settlement is res judicata with respect to Plaintiffs' EJC, Milk, and Yogurt claims.  MTD at 8.  Res judicata bars relitigation of claims that were raised or could have been raised in a prior action.  Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001).  The doctrine is applicable whenever there is (1) identity or privity between the parties in the first and second action, (2) a final judgment on the merits, and (3) an identity of claims.  Id.

As to the first requirement, Plaintiffs do not dispute that

they were class members in the Florida action.  However, Plaintiffs argue that their interests were inadequately represented in that action and that they were provided with inadequate notice of the proceedings.  Opp'n at 6.  Both of these arguments were rejected by the Florida court when it denied Plaintiffs motions to intervene and set aside the Singer Settlement.  The Court declines to revisit those issues now and finds that the first requirement of res judicata has been met.

With respect to the second requirement, Plaintiffs argue that there was no final judgment in the Florida action because the Florida court did not issue a separate document setting out a final judgment.  This argument lacks merit.  The Florida court's order approving the class settlement expressly states Defendants may "file the Settlement Agreement and/or this Judgment in any action . . . based on principles of res judicata . . . or any theory of claim preclusion."  RJN Ex. 19 ¶ 9.  The order refers to itself as a judgment four other times and also uses the phrase "IT IS HEREBY ORDERED, ADJUDGED AND DECREED."  Moreover, Plaintiffs have essentially conceded the finality of the order by appealing it to the Eleventh Circuit.

As to the third requirement of res judicata, Plaintiffs do not dispute that there is an identity of claims as to the EJC and Yogurt Claims.  Nor could they.  The Singer Settlement discharges all claims "arising from, or in any way whatsoever relating to the use of the term evaporated cane juice with respect to [Defendants'] Products . . . ."  RJN Ex. 19 § VI.  Both the EJC and Yogurt claims are predicated on Defendants' use of the term EJC.  Indeed, Plaintiffs' EJC claims are practically identical to Singer's.

6

1  While the Yogurt Claims were not raised in the Florida action, they
2  are premised on the same theory -- that EJC is equivalent to sugar
3  -- and thus arise out of the same nucleus of operative facts.  See
4  Frank v. United Airlines, Inc., 216 F.3d 845, 851 (9th Cir. 2000)
5  (Central criterion in determining whether there is an identity of
6  claims is whether the two suits arise out of the same transactional
7  nucleus of facts.)
8      The parties dispute whether there is an identity of claims
9  with respect to the Milk Claims.  Defendants argue that the Milk
10 Claims are precluded because they only target products that contain
11 EJC.  The Court disagrees.  The Singer Settlement bars claims that
12 relate to the use of the term EJC, not claims relating to products
13 that contain EJC.  Plaintiffs' Milk Claims are not predicated on
14 Defendants' use of the term EJC.  Rather, the Milk Claims are based
15 on the theory that a reasonable consumer could confuse soymilk,
16 almond milk, or coconut milk for dairy milk.
17     Accordingly, the Court finds that res judicata bars
18 Plaintiffs' EJC and Yogurt Claims, but not their Milk Claims.
19 Accordingly, the Court proceeds to determine whether the Milk
20 Claims are preempted.
21     **B.   Preemption**
22     The crux of Plaintiffs' Milk Claims is that Defendants' use of
23 terms "soymilk," "almond milk," and "coconut milk" in the names of
24 Silk Products violates the "standard of identity" for milk.  A
25 standard of identity is a requirement that determines what a food
26 product must contain to be marketed under a certain name.  The
27 FDCA, as amended, contains a broad preemption provision which
28 prohibits states or other political subdivisions from imposing any

requirements regarding standard of identity that is not identical to the federal requirements. 21 U.S.C. § 343-1(a). Defendants argue that Plaintiffs' Milk Claims attempt to impose new requirements concerning the standard of identity for milk.

The FDCA requires a food to be identified by "the common or usual name of the food, if any there be." 21 U.S.C. § 343(i). FDA regulations require that a "statement of identity" must be in terms of: (1) the name prescribed by federal law or regulation, "(2) [t]he common or usual name of the food; or, in the absence thereof, (3) [a]n appropriately descriptive term, or when the nature of the food is obvious, a fanciful name commonly used by the public for such food." 21. C.F.R. § 101.3(b).

Plaintiffs have not pointed to any statutory or regulatory provision prescribing how the Silk Products must be labeled. However, Plaintiffs do point to 21 C.F.R. § 131.110, which describes Milk as the "lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows." Plaintiffs reason that this regulation bars Defendant from using the name milk in connection with soy-, almond-, coconut-based products since those products do not come from cows. However, § 131.110 pertains to what milk is, rather than what it is not, and makes no mention of non-dairy alternatives such as the Silk Products.

Plaintiffs also point to FDA warning letters to soymilk manufacturers, which are referenced in the Complaint. These letters primarily address sanitary conditions at the manufactures' facilities and other labeling issues which are not relevant to this case. See ECF No. 26 ("Pl.'s RJN") Exs. G, H. However, citing 21

C.F.R. § 131.110, the letters also warn two manufacturers that their "soymilk" products are misbranded because they use the term milk. ECF No. 26 ("Pl.'s RJN) Exs. G, H. An agency's reasonable interpretation of its own regulation is entitled to wide deference. Pub. Lands for the People, Inc. v. U.S. Dep't of Agric., 697 F.3d 1192, 1199 (9th Cir. 2012). However, the brief statements in the two warning letters cited by Plaintiffs are far from controlling. This is especially true since the FDA regularly uses the term soymilk in its public statements, see, e.g., FDA Enforcement Report, 2011 WL 6304352 (Dec. 14, 2011); FDA Enforcement Report, 2007 WL 4340281 (Dec. 12, 2007), suggesting that the agency has yet to arrive at a consistent interpretation of § 131.110 with respect to milk substitutes.

As the FDA has yet to prescribe a name for the Silk Products, the Court considers the "common or usual name[s]" for those foods. See 21 U.S.C. § 343(i). FDA regulations provide that the common or usual name of a food "shall accurately identify or describe, in as simple terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a). "Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods." Id. Moreover, the common or usual name may be established by common usage. Id. § 102.5(d).

Here, the Court agrees with Defendants that the names "soymilk," "almond milk," and "coconut milk" accurately describe Defendants' products. As set forth in the regulations, these names clearly convey the basic nature and content of the beverages, while clearly distinguishing them from milk that is derived from dairy

1  cows.  Moreover, it is simply implausible that a reasonable
2  consumer would mistake a product like soymilk or almond milk with
3  dairy milk from a cow.  The first words in the products' names
4  should be obvious enough to even the least discerning of consumers.
5  And adopting Plaintiffs' position might lead to more confusion, not
6  less, especially with respect to other non-dairy alternatives such
7  as goat milk or sheep milk.
8     Accordingly, the Court finds that Plaintiffs' Milk Claims are
9  preempted.
10    **C.   Plausibility**
11    Plaintiffs' Milk Claims fail for the additional reason that
12 they are simply not plausible.  False advertising claims under the
13 UCL, FAL, and CLRA are governed by the reasonable consumer
14 standard, whereby a plaintiff must show that members of the public
15 are likely to be deceived.  Williams v. Gerber Products Co., 552
16 F.3d 934, 938 (9th Cir. 2008).  The question of whether a business
17 practice is deceptive is generally a question of fact not amenable
18 to determination on a motion to dismiss.  Id.
19    However, in certain situations a court may assess, as a matter
20 of law, the plausibility of alleged violations of the UCL, FAL, and
21 CLRA.  For example, in Werbel ex rel. v. Pepsico, Inc., C 09-04456
22 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010), the plaintiff
23 alleged that he believed "Cap'n Crunch's Crunch Berry" cereal
24 derived its nutrition from actual fruit because of its label's
25 reference to berries and because its cereal balls were shaped like
26 berries.  The Court found such allegations to be "[n]onsense."  Id.
27 The court reasoned that the word "berries" was always preceded by
28 the word "crunch" to form the term "crunch berries," and that the

image of crunch berries on the label did not even remotely resemble any naturally occurring fruit of any kind.  Id.

Plaintiffs' Milk Claims fail for similar reasons.  The crux of the claims is that a reasonable consumer might confuse plant-based beverages such as soymilk or almond milk for dairy milk, because of the use of the word "milk."  The Court finds such confusion highly improbable because of the use of the words "soy" and "almond."  Plaintiffs essentially allege that a reasonable consumer would view the terms "soymilk" and "almond milk," disregard the first words in the names, and assume that the beverages came from cows.  The claim stretches the bounds of credulity.  Under Plaintiffs' logic, a reasonable consumer might also believe that veggie bacon contains pork, that flourless chocolate cake contains flour, or that e-books are made out of paper.

Thus, even if Plaintiffs Milk Claims were not preempted, they would still fail under the reasonable consumer test, as well as plausibility standard set forth in Iqbal and Twombly.

**V.  CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED, and Plaintiffs Alex Ang and Kevin Avoy's claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

December 10, 2013

UNITED STATES DISTRICT JUDGE